Bolster, C. J.
This is an action against the surety on a bond given to dissolve an attachment. The original writ, describing an action of “contract or tort”, ran against the Hosmer Motor Sales, Inc., the principal on this defendant’s *663 bond, and one MacDonald. A trustee answered that it had no funds of MacDonald, but had $600. deposited to the credit of the Hosmer Motor Sales, Inc. The action resulted in a judgment against MacDonald, and in favor of the other defendant.
The bond is conditioned, as provided in G. L. ¡Ch. 223, §120, to pay the plaintiff the judgment, if any, that he may recover in the action.
The plaintiff relies upon Burns Bros. Co. v. Block, 1935 Adv. Sh. 2373. In that case the writ ran against A. and C. individually and as trustees of an investment trust, and against B. and O. as trustees of the same trust. B. and C. as trustees signed as principals a bond to dissolve attachment. The judgment was against A. and C. individually, the only form of judgment which could be entered against them at law, and against, the plaintiff as to both A. and C. and B. and C. as trustees. The surety was held. That is not this case. The bond there was joint. Here it is single.
The bond was joint, as to principal, in Patch v. Robbins, 261 Mass. 496. Those cases are not particularly helpful, as decisions.
Gen. Stats. (1860) Ch. 123, §104, provided for the dissolution of attachments by giving a bond conditioned to pay the judgment.
In cases upon bonds so given, the court had shown a disposition to let the obligee get what he would have gotten under the attachment, and nothing more. cf. Loring v. Eager, 3 Cush. 188, Gass v. Smith, 6 Gray, 112. That same thought now reappears in G. L. Ch. 223, §128.
Leonard v. Speidel, 104 Mass. 356, decided in 1870 was probably what led to the act of 1871. That case arose on a joint and several bond of three, alleged to be jointly liable in the original action. Judgment went against two only *664 and.in holding the sureties the court said that if the defendant who: prevailed, his separate property being attached, had wished to limit his liability he should have givén a bond to- secure only the judgment which might be recovered against him.
Eveleth v. Burnham, 108 Mass. 374, was decided in November, 1871, on a bond given in 1867, reciting an action against the principal obligor and an attachment of his property. A judgment was obtained against a co-defendant alone, and the bond was' held not breached by its nonpayment, a manifestly just result and a precedent which would control here if the. legislature had not taken a hand to clarify matters.
. By Stat. 1871, Ch. 114, precursor of G. L. Ch. 223, §129, provision was made for the sole bond, of one of several defendants, and, if limited liability, sole or joint, is to follow, the statute.says that the condition of the bond “shall” be so limited. By section two, it is provided that “ in all other respects attachments shall be dissolved in the manner provided by the General Statutes.. Obviously, there is nothing to prevent a surety from assuming a wider liability than his principals if he chooses to do so. Stat. 1877, Ch. 97 permitted, in addition to the bonds previously authorized, a bond in trustee process conditioned tb pay the amount for which the trustee should be charged;
Provision is also made by G. L. (Ter. Ed.) Ch. 223, §125 for the release of particular property attached, and it is provided that such bond, whether given to' the plaintiff or to an officer in case, of successive attachments shall be conditioned to pay the value of the property.
These statutory enactments make plain a legislative intention that the extent, of liability shall be measured by the condition.of the bond itself,-, and not 'by recitals or resort to outside matters, opening .up a wide' field containing many *665 borderline cases, as exemplified by the decisions before 1871. The legislature has said plainly to parties giving bonds, “If your liability is to extend only to that of one defendant, let the condition of your bond- say so. If you are going good only for the value of certain property, state that in the condition of your bond. If you are binding yourself only for trusteed goods or credits, say that in the condition of your bond. And then no court can fail to understand just what you have undertaken, and outside exploration for intention will be needless”. And such has been the basis of construction-in cases since 1871. Campbell v. Brown, 121 Mass. 516; Central Mills v. Stewart, 133 Mass. 461 (semble); Dalton v. Barnard, 150 Mass. 473; Prior v. Pye, 164 Mass. 316.
The only case in which the opinion might cast doubt upon the rule stated in Mass. Bldg. Finish Co. v. Brenner, 288 Mass. 481. In that case the plaintiff sued the Massachusetts Live Poultry Company and Max Eiseman. The first-named defendant gave a sole bond, with Brenner as surety, conditioned to pay the judgment recovered in the action, without limitation. Thereafter, by amendment, Mary Eiseman was substituted for Max Eiseman as a defendant. Judgment went against both the company and Mary Eiseman. The points raised concerned the effect upon the surety’s undertaking resulting from the amendment. But the court, though it had a precedent in Tucker v. White, 5 Allen 322, went out of its way to say that the bond should be interpreted as given in compliance with G. L. (Ter. Ed.) Ch. 223, §129, and that, as it seems to us, in the teeth of the last clause of that section. If it was intended to overrule Prior v. Pye, why not say so? We find nothing in the books from which this defendant can draw confort except that dictum, and as between that and a plain statutory requirement, we feel constrained to follow the' latter. This bond is' not *666 “conditioned” as section 129 requires, and we see no room for a court to say that it is something which the legislature has, by the plainest implication, said that it should not be. This may be a hard case, but “hard cases make bad law”, and any habit of deciding, on what is at best an imperfect report of an entire trial, what seems to be a just result in the particular case and then hunting for reasons to support that conclusion, is bound to create endless confusion in the law.
It is true that our conclusion does not square with some of the rulings which the judge gave at the defendant’s request, such as the ninth, but the whole case is before us on the interpretation of the bond and the issue is wholly one of law. G. L. (Ter. Ed.) Ch. 231, §124. Since the passage of the Simplified Procedure act in 1913, many old rules about “the law of the ease” have faded into a merited obscurity.
The defendant further argues that its principal lacked capacity to sign the bond, inasmuch as the legal result of so doing would, given the construction which we adopt, make it liable for the default of a stranger. We do not think the defendant can escape on that ground. Winn v. Sanford, 145 Mass. 302 and cases cited. Williston, Contracts, Sections 1213-1214. In view of that, the exclusion of the charter of the Hosmer Motor Sales, Inc., was not error. But the fact that the plaintiff voluntarily discharged all the trustees after the filing of the bond has nothing to do with the case.
The only remaining matter comes on the exclusion of the special findings filed in the case in which the bond was given. As we understand the report, the judge let in the record of the judgment, but shut out the special findings on which that judgment rested. What creates the uncertainty, is that the defendant asked the judge to rule that “the record and findings” in the case in which the bond was filed *667 were admissible in evidence, and the judge said “Such record was admitted”. Passing the fact that the end of the trial is no time to ask for rulings on the admissibility of evidence, the defendant did not suffer any discernible prejudice if the record of the findings excluded when first offered, were later admitted. Beyond that, we think that the only use of any of those findings would be to establish an equitable defence, which is something that must be pleaded. All that the answer contains in that regard is contained in the third paragraph, which falls far short of meeting the requirements of an equitable defence to an action at law. The gist of that paragraph seems to lie in an allegation that Hosmer had paid MacDonald. But the court found against MacDonald on a count for labor and materials.
There are cases not helpful to this defendant, taking a distinction between a compensated and a gratuitous surety. Williston, Contracts, cf. Jones v. Thayer, 12 Gray, 443.
There are also cases which would appear to support a rule that if the obligee in the bond and the defendant who is found liable are engaged in a concerted effort to defraud the defendant who is found not liable, by fastening liability upon him, such party, and consequently his surety, if ignorant of the fraud, may have relief.
Williston, Contracts, Revised Edition, §1218. Whether such relief, under our practice, will come by way of an equitable defence to an action at law, or by a bill in equity to enjoin the action, need not now be decided, for we do not think that the findings in the original ease would, if admitted, tend to show anything more than that Sutherland and MacDonald were engaged in a scheme to cheat a certain oil company. It would not follow that they also planned to cheat Hosmer, or succeeded in doing so. What the issues were in the case (No. 23382) is not clear from the report. Neither does it appear what judgment was *668 entered in that case nor what were the contracts referred to in the findings. If facts exist which would call for the application of the rule last suggested, good as an equitable defence to an action at law, the defendant’s proper course, if so advised, would be to apply to the trial judge for leave to amend its answer by setting up those facts and to ask a trial of that issue. On the showing of this report we do not find error.
Report dismissed.
STATEMENT
Statement of the ownership, management, circulation, etc., required by the Act of Congress of August 24, 1912, of Massachusetts Appellate Division Reports published bi-monthly at Boston, Mass, for October 1, 19S7.
State of Massachusetts, County of Suffolk — ss.
Before me, a Notary Public in and for the State and county aforesaid, personally appeared A. Moskow, who, having been duly sworn according to law, deposes and says that he is the editor of the Massachusetts Appellate Division Reports and that the following is, to the best of his knowledge and belief, a true statement of the ownership, management (and if a daily paper, the circulation), etc., of the aforesaid publication for the date shown in the above caption, required by the Act of August 24, 1912, embodied in section 411, Postal Laws and Regulations, printed on the reverse of this form, to wit:
1. That the names and addresses of the publisher, editor, managing editor, and business managers are: Publisher, Lawyers’ Brief & Publishing Co., Boston, Mass.; Editors, A, Moskow— H. G. Slater; Managing Editor, A. Moskow; Business Managers, H. G. Slater, all of Boston, Mass.
2. That the owner is: (If owned by a corporation, its name and address must be stated and also immediately thereunder the names and addresses of stockholders owning or holding one per cent or more of total amount of stock. If not owned by a corporation, the names and addresses of the individual owners must be given. If owned by a firm, company, or other unincorporated concern, its name and address, as well as those of each individual member must be given.) Lawyers’ Brief & Publishing Co., Boston; W. T. Kirkdn, T. Lyons, A. Moskow, W. G. Embree, all of Boston, Mass.
3. That the known bondholders, mortgagees, and other security holders owning or holding 1 per cent or more of total amount of bonds, mortgages or other securities are: (If there are none, so state.) None.
4. That the two paragraphs next above, giving the names of the owners, stockholders, and security holders, if any, contain not only the list of stockholders and security holders as they appear upon the books of the company but also, In cases where the stockholder or security holder appears upon the books of the company as trustee or in any other fiduciary relation, the name of the person or corporation for whom such trustee is acting, is given; also that the said two paragraphs contain statements embracing affiant’s full knowledge and belief as to the circumstances and conditions under which stockholders and security holders who do not appear upon the books of the company as trustees, hold stock and securities in a capacity other than that of a bona fide owner; and this affiant has no reason to believe that any other person, association, or corporation has any interest direct or indirect in the said stock, bonds, or other securities than as so stated by him.
5. That the average number of copies of each issue of this publication sold or distributed, through the mails or otherwise, to paid subscribers the 12 months preceding the date shown above is.......(This information is required from daily publications only.)
A. MOSKOW,
Editor.
Sworn to and subscribed before me this 22nd day of October, 1937.
JOHN E. REAGAN.
(Seal)
My Commission expires March 10, 1944.